ALBERT G. BAGOLY, JR. *v.* FRANK J. RICCIO ET AL.
(AC 27587)

DiPentima, Gruendel and Berdon, Js.

Argued March 26—officially released July 31, 2007

*William F. Gallagher*, with whom, on the brief, were *Hugh D. Hughes* and *John L. Stawicki*, for the appellant (plaintiff).

*Edward Maum Sheehy*, for the appellee (named defendant).

*Terence D. Mariani*, for the appellee (defendant Richard R. Burmeister).

*Opinion*

GRUENDEL, J. In this legal malpractice action stemming from a postmarital dissolution case, the plaintiff, Albert G. Bagoly, Jr., appeals from the summary judgment rendered by the trial court in favor of the defendants, Frank J. Riccio and Richard R. Burmeister. On appeal, the plaintiff claims that the court improperly granted the defendants' motion for summary judgment by (1) failing to apply the continuing representation doctrine for his negligence claim and (2) applying res judicata and collateral estoppel to his breach of contract claim. We affirm in part and reverse in part the judgment of the trial court.

The following facts and procedural history are relevant to the issues on appeal. The plaintiff was the defendant in a marital dissolution action in January, 1996, at the conclusion of which the court rendered judgment in accordance with the agreement submitted by the parties regarding alimony and property distribution. That separation agreement stated that the plaintiff would pay his former wife $400 per week in alimony and further provided that she was entitled to half of his pension, as vested through June 1, 1995, upon his retirement. Subsequent to the dissolution, the plaintiff, concerned about having to continue to pay alimony upon his retirement in addition to the pension, sought

legal advice from the attorney who had represented him in the dissolution action. Unsatisfied with the attorney's response, the plaintiff sought legal assistance from Riccio, who assigned the matter to Burmeister, another attorney at his law firm. Burmeister drafted a motion to clarify and to modify the dissolution agreement.

On February 27, 1997, Burmeister negotiated with the attorney for the plaintiff's former wife with the intention of forming an agreement that would replace the alimony requirement with an increased life insurance policy, to which the plaintiff's former wife would be entitled upon the plaintiff's death. On the same day, the court adopted a written agreement that was signed by both parties. The agreement, however, did not contain a provision to terminate the plaintiff's weekly alimony payments upon his retirement and contained only the addition of the life insurance policy. The plaintiff paid the attorney's fees requested by Riccio.

In August, 2001, the plaintiff retired from the Bridgeport school system and discovered that the modification had not eliminated the requirement to pay alimony. He contacted Riccio, who requested a $2500 retainer fee to resolve the problem. The plaintiff did not pay the fee and instead contacted Burmeister, who no longer worked with Riccio. On September 10, 2001, the court denied the plaintiff's motion to modify the February 27, 1997 order, and on November 15, 2001, the court denied his subsequent motion for reargument.[1] At that hearing, Burmeister testified as a witness, affirming that the order did not reflect the agreement between the parties.[2]

[1] At the hearing, the plaintiff was represented by other counsel.

[2] In an affidavit filed on November 5, 2001, Burmeister admitted that "[i]nadvertently, language was left out eliminating the alimony payments that were agreed to. The alimony payments should have been replaced by the agreement approved by both parties on February 27, 1997."

On January 18, 2002, the plaintiff brought this action against both Riccio and Burmeister, claiming that the failure of the defendants to include language in the agreement that corresponded with the negotiations constituted negligence and a breach of express or implied contract.[3] On March 19 and April 22, 2004, Burmeister and Riccio, respectively, filed motions for summary judgment, claiming that the statute of limitations barred the plaintiff's claims.[4] On May 10, 2004, the court held a hearing on the motions and on August 25, 2004, granted the motions for summary judgment on the negligence count but denied them for the breach of contract claim. The defendants later filed additional motions for summary judgment, this time alleging that collateral estoppel precluded the breach of contract claim. The court held a hearing on April 25, 2005, and granted Riccio's motion on July 20, 2005.[5] This appeal followed.[6]

Before addressing the merits of the plaintiff's claims, we set forth the applicable standard of review of a trial court's ruling on a motion for summary judgment. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is

---

[3] A third count was also included, which alleged a violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. Riccio's motion to strike that count was granted on February 27, 2003, and it was not litigated thereafter.

[4] On February 25, 2004, Riccio also filed a cross claim against Burmeister, which stated that "[i]f the plaintiff . . . recovers damages as alleged in his [r]evised [c]omplaint and Riccio is held liable, which liability is expressly denied, then in that event Riccio is entitled to indemnification from Burmeister . . . ."

[5] On July 27, 2005, Burmeister filed a motion for articulation "to make clear that summary judgment is as to all defendants." On June 28, 2005, the court granted Burmeister's motion for summary judgment on the same grounds.

[6] We note that although summary judgment was rendered on the first count on August 25, 2004, the plaintiff was not required to file a notice of intent to appeal before final judgment was rendered. See Practice Book § 61-5.

no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law." (Internal quotation marks omitted.) *Brown* v. *Soh*, 280 Conn. 494, 500–501, 909 A.2d 43 (2006). Our review of the trial court's decision to grant the defendants' motion for summary judgment is plenary. See id.

I

We first address the parties' claims that the court improperly decided the motions for summary judgment related to the statute of limitations.

A

The plaintiff first argues that the court improperly granted the defendants' motions for summary judgment on his negligence claim by failing to apply the continuing representation doctrine. Specifically, he argues that Burmeister's testimony before the court in 2001 constituted his continuing representation, which tolled the three year statute of limitations to bring a tort action. We disagree.

General Statutes § 52-577 provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." "[A] plaintiff may invoke the [continuous representation] doctrine, and thus toll the statute of limitations, when the plaintiff can show: (1) that the defendant continued to represent him with regard to the same underlying matter; *and* (2) either that the plaintiff did not know of the alleged malpractice *or* that the attorney

could still mitigate the harm allegedly caused by that malpractice during the continued representation period." (Emphasis in original.) *DeLeo* v. *Nusbaum*, 263 Conn. 588, 597, 821 A.2d 744 (2003). Because it is unfathomable that the defendants continued to represent the plaintiff simply because Burmeister submitted an affidavit and testified during the hearing on the modification of the separation agreement, the continuous representation doctrine does not apply to the plaintiff's negligence claim. Burmeister last represented the plaintiff on February 27, 1997, and the plaintiff brought the present action on January 18, 2002, well beyond the three year statute of limitations. Accordingly, the plaintiff's first claim fails.

## B

We also conclude that the court properly denied the defendants' motions for summary judgment on statute of limitations grounds concerning the plaintiff's breach of contract claim.[7] The defendants assert that the court, in its August 25, 2004 memorandum of decision, improperly denied their motions for summary judgment because the plaintiff's breach of contract claim was subject to a three year statute of limitations. They cite General Statutes § 52-581, which provides in relevant part: "(a) No action founded upon any express contract or agreement which is not reduced to writing, or of which some note or memorandum is not made in writing and signed by the party to be charged therewith or his agent, shall be brought but within *three years* after the right of action accrues. . . ." (Emphasis added.) General Statutes § 52-576, however, provides in relevant part: "(a) No action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within *six years* after the right of action

---

[7] The defendants raise this issue as an alternate ground to affirm the final judgment rendered by the court.

accrues . . . ." (Emphasis added.) The defendants claim that because the contract with the plaintiff was oral, the three year statute of limitations applies.

This court has addressed the distinction between §§ 52-581 and 52-576. "These two statutes, each establishing a different period of limitation, can both be interpreted to apply to actions on oral contracts. Our Supreme Court has distinguished the statutes, however, by construing § 52-581, the three year statute of limitations, as applying only to *executory* contracts. . . . A contract is *executory* when neither party has fully performed its contractual obligations and is *executed* when one party has fully performed its contractual obligations. . . . It is well established, therefore, that the issue of whether a contract is oral is not dispositive of which statute applies. Thus, the . . . argument that § 52-581 automatically applies to the oral contract between the parties is incorrect. The determinative question is whether the contract was executed." (Citations omitted; emphasis in original; internal quotation marks omitted.) *John H. Kolb & Sons, Inc.* v. *G & L Excavating*, 76 Conn. App. 599, 610, 821 A.2d 774, cert. denied, 264 Conn. 919, 828 A.2d 617 (2003).

We note that the court properly concluded: "According to the allegations of the complaint, the contract that the defendants allegedly breached is not an executory contract. The plaintiff fully paid the fee owed to the defendants, terminating the attorney-client relationship. The plaintiff fulfilled his only contractual obligation. Thus, the six year statute of limitations applicable to executed oral contracts . . . General Statutes § 52-576, is applicable. . . . Thus, the defendants' motion for summary judgment directed to [the plaintiff's breach of contract claim] is denied." (Citation omitted.) Although the defendants claim that the plaintiff paid only a portion of the retainer fee and therefore did not fully perform his contractual obligations, the

plaintiff's affidavit states that he paid the fee in full. Because it presents a question of fact, summary judgment is inappropriate. The defendants' attempt to extend summary judgment on statute of limitations grounds to the plaintiff's breach of contract claim therefore fails.

## II

The plaintiff next argues that the court improperly granted the defendants' motions for summary judgment by concluding that the doctrines of res judicata and collateral estoppel precluded his claim of breach of express or implied contract. Specifically, he argues that because neither the parties nor the issues were the same, his action was not subject to the doctrines of res judicata or collateral estoppel. We agree.

Although the defendants' pertinent motions for summary judgment claimed only that collateral estoppel barred the plaintiff's claim, the court addressed both res judicata and collateral estoppel in its July 20, 2005 memorandum of decision. The applicability of res judicata and collateral estoppel is a question of law over which our review is plenary. See, e.g., *R & R Pool & Patio, Inc.* v. *Zoning Board of Appeals*, 257 Conn. 456, 466, 778 A.2d 61 (2001); *Linden Condominium Assn., Inc.* v. *McKenna*, 247 Conn. 575, 594, 726 A.2d 502 (1999). "Claim preclusion (res judicata) and issue preclusion (collateral estoppel) have been described as related ideas on a continuum." (Internal quotation marks omitted.) *Bouchard* v. *Sundberg*, 80 Conn. App. 180, 186, 834 A.2d 744 (2003). "The doctrines of res judicata and collateral estoppel protect the finality of judicial determinations, conserve the time of the court, and prevent wasteful relitigation." (Internal quotation marks omitted.) *Twenty-Four Merrill Street Condominium Assn., Inc.* v. *Murray*, 96 Conn. App. 616, 619, 902 A.2d 24 (2006).

The court's treatment of res judicata warrants little discussion. "[T]he doctrine of res judicata . . . [provides that] a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action [between the same parties or those in privity with them] on the same claim." (Citations omitted; internal quotation marks omitted.) Id. In its July 20, 2005 memorandum of decision, the court stated: "The present claim is premised upon an identical claim for relief, modification of the alimony obligation based upon retirement." In fact, however, the plaintiff's claims for relief against the defendants for negligence and breach of contract demanded money damages, punitive and exemplary damages, attorney's fees and "[s]uch other and further relief as provided by law and equity." Because the claims in the present action were not the same as those in the prior action against his former wife, in which the plaintiff sought a modification of the dissolution order, res judicata was inapplicable.

The doctrine of collateral estoppel also is inapplicable in this case because the parties in the two actions at issue were distinct. "Collateral estoppel, or issue preclusion, is that aspect of res judicata which prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action *between the same parties upon a different claim.*" (Emphasis added; internal quotation marks omitted.) *Mount Vernon Fire Ins. Co.* v. *Morris*, 90 Conn. App. 525, 535, 877 A.2d 910 (2005), appeal dismissed, 281 Conn. 544, 917 A.2d 538 (2007). The parties subject to the plaintiff's motions to modify and to reargue in 2001 were the plaintiff and his former wife. Burmeister appeared only as a witness testifying for the plaintiff at the hearing on the latter motion and was not a party to the action. It was not until January 18, 2002, that the plaintiff brought the current action against the defendants. "The rule of issue preclusion is operative where the second action is between the *same persons* who

were parties to the prior action, *and who were adversaries* . . . with respect to the particular issue . . . ." (Emphasis added.) 1 Restatement (Second), Judgments § 27, comment (a) (1982). Because the requirement that the parties be the same and be adversaries in the two actions was not satisfied, the application of collateral estoppel was improper.

The defendants claim that "mutuality of parties is no longer required to invoke collateral estoppel." We decline the defendants' invitation, however, to apply our Supreme Court's conclusion in *Aetna Casualty & Surety Co.* v. *Jones*, 220 Conn. 285, 596 A.2d 414 (1991), to the present case. In *Aetna Casualty & Surety Co.*, the deceased wife's estate was collaterally estopped from relitigating the issue of intent against the insurance company when her husband previously had been convicted of manslaughter in the first degree, indisputably proving his intent beyond a reasonable doubt. The court held that the deceased wife's estate was in privity with the convicted husband for purposes of collateral estoppel. "Collateral estoppel may be invoked against a party to a prior adverse proceeding *or against those in privity with that party.* . . . While it is commonly recognized that privity is difficult to define, the concept exists to ensure that the interests of the party against whom collateral estoppel is being asserted have been adequately represented because of his purported privity with a party at the initial proceeding. . . . A key consideration in determining the existence of privity is the sharing of the same legal right by the parties allegedly in privity." (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 303–304.

It is unclear who the defendants claim is in privity with whom, but the only logical inference is that they claim that *they* are in privity with the plaintiff's former wife and are entitled therefore to collateral estoppel. The facts in this case are fundamentally different from

those in *Jones*, however, in which the insurance company claimed that the decedent's rights had been represented in the criminal trial of her husband and her estate therefore could not relitigate the issue of intent. We decline to apply this holding to the present case. Because the defendants do not share the same legal right as the plaintiff's former wife, the parties are not in privity for purposes of collateral estoppel.

Accordingly, res judicata and collateral estoppel did not bear on the plaintiff's complaint against the defendants, and the rendering of summary judgment on the plaintiff's breach of contract claim on those grounds was improper.[8]

The summary judgment on the plaintiff's breach of contract claim is reversed and the case is remanded for further proceedings in accordance with law. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

---

[8] Due to this conclusion, we need not address the defendants' assertion that "[t]o prevail on the breach of contract claim set forth in the second count, the plaintiff must demonstrate that he would have succeeded in modifying the separation agreement to terminate [his] obligation to pay alimony on [his] retirement. The issue has already been litigated in [the dissolution action between the plaintiff and his former wife]."

As previously stated, because the parties were not the same, and the defendants were not in privity with the plaintiff's former wife, collateral estoppel does not bar the plaintiff's breach of contract claim, notwithstanding the alleged prior litigation of the issue.