SUSANA C. KAVANAH *v.* LEO G. KAVANAH III
(AC 34023)

DiPentima, C. J., and Sheldon and Harper, Js.

Argued February 6—officially released May 21, 2013

*Jon T. Kukucka,* with whom, on the brief, were *C. Michael Budlong* and *Campbell D. Barrett,* for the appellant (plaintiff).

*Opinion*

DiPENTIMA, C. J. The plaintiff, Susana C. Kavanah, appeals from certain financial orders made by the trial court following the dissolution of her marriage to the defendant, Leo G. Kavanah III.[1] On appeal the plaintiff claims that the court improperly (1) deviated from the child support guidelines and (2) ordered the parties, sua sponte, to pay the guardian ad litem an additional sum of $5000. We agree with both of the plaintiff's claims and therefore reverse the judgment and remand the matter to the trial court for further proceedings.

The parties married in June, 2007, and their daughter was born later that year. On February 4, 2010, the plaintiff commenced this dissolution action. She sought, inter alia, orders for child support and joint legal custody. The plaintiff also requested that the daughter's primary residence be with her. On March 29, 2010, the court appointed attorney Sandi B. Girolamo as guardian ad litem for the daughter.

---

[1] The defendant did not file an appellate brief in this matter.

The court, *Dolan, J.*, conducted a trial on September 15, 2011, and October 27, 2011.[2] The court accepted the parties' agreement as to many of the property and financial issues at the outset of the trial. The parties also agreed to an order of joint custody of the daughter. Complicating the parenting schedule, however, was the plaintiff's relocation from Southington to Monroe during the pendency of the divorce. Both Lisa Killiany, the family relations counselor assigned to this case, and Girolamo opposed this relocation due to the increase in travel it required and its disruptive effect on the daughter.

The court issued an oral decision on October 27, 2011. It dissolved the marriage and ordered custody and visitation mostly in accordance with Girolamo's recommendations. The court set the visitation schedule so that the defendant had custody of the daughter five out of every six weekends and every other Wednesday. The court also ordered that the defendant be responsible for driving his daughter back to the plaintiff's house every other weekend of his time with her. The plaintiff was responsible for two thirds of the day care expenses and the defendant one third. The court found an arrearage owed by the defendant in the amount of $3006.90 for day care expenses. The court found the presumptive amount of child support under the guidelines to be $100 per week, payable by the defendant. The court entered an order deviating from the guidelines. "Based on all of the family obligations here, including travel cost, I'm going to order [the defendant] to pay $75 a week child support. I'm going to order him to pay $41 a week for the day care." The plaintiff's counsel inquired about the reason for the deviation and the court noted that the defendant was driving the daughter back to the plaintiff's house twice per month.

---

[2] The defendant represented himself before the trial court.

The court also ordered the parties to pay Girolamo an additional sum of $5000 in fees. The order was made sua sponte by the court after Girolamo testified that she had received payment for her services from the state. The plaintiff was ordered to pay two thirds of the fees and the defendant one third.[3] This appeal followed.

On January 23, 2012, the plaintiff filed a motion for articulation, requesting that the court articulate the reasons for (1) the deviation from the child support guidelines, (2) the award of $5000 in fees to Girolamo and (3) the division of payment of the fees between the parties. The court denied the motion on January 31, 2012. On February 14, 2012, the plaintiff filed a motion for review with this court. We granted the motion and ordered the trial court to explain why it had ordered $5000 in fees when Girolamo had accepted payment from the state and why the plaintiff was required to pay two thirds of said fees. On April 12, 2012, the court issued its articulation. It explained that it ordered the plaintiff to pay two thirds of the fees owed to Girolamo after considering all the relevant statutory criteria and case law and taking into account the fact that the defendant did not receive an interest in the parties' real estate or the plaintiff's pension assets, and his obligations in providing for two children from a previous marriage. With respect to the fees awarded to Girolamo, the court stated: "The guardian ad litem was awarded $5000 in counsel fees because the parties were not indigent and the guardian ad litem did not qualify to be paid at state rates. This was confirmed by the substantial legal fees that the plaintiff paid her trial counsel and the $10,000 fee that the defendant paid appellate counsel."[4]

---

[3] The defendant was to pay $20 per week until his share of Girolamo's fees were paid.

[4] The record is not clear as to the basis for the court's articulation that the defendant paid $10,000 to appellate counsel.

On appeal, the plaintiff claims that the court's deviation from the child support guidelines was improper. She also contends that the court improperly awarded, sua sponte, $5000 in fees to Girolamo. We address each claim in turn.

We start by setting forth the standard of review. "The well settled standard of review in domestic relations cases is that this court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. . . . As has often been explained, the foundation for this standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case . . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Citation omitted; internal quotation marks omitted.) *Maturo* v. *Maturo*, 296 Conn. 80, 87–88, 995 A.2d 1 (2010); *Weinstein* v. *Weinstein*, 104 Conn. App. 482, 487, 934 A.2d 306 (2007), cert. denied, 285 Conn. 911, 943 A.2d 472 (2008).

I

In her claim that the court improperly ordered a downward deviation from the child support guidelines, the plaintiff argues, inter alia, that there was no evidence to support the court's finding that the travel from Monroe to Southington justified the deviation, and therefore that the court's order amounted to an abuse of discretion. We agree.

We begin our analysis by identifying the legal principles regarding the application of the child support guidelines. "To ensure the appropriateness of child support awards, General Statutes § 46b-215a provides for a commission to oversee the establishment of child support guidelines. General Statutes § 46b-215b

requires that [t]he . . . guidelines . . . be considered in all determinations of child support amounts . . . . [T]here shall be a rebuttable presumption that the amount of such awards which resulted from the application of such guidelines is the amount of support . . . . A specific finding on the record that the application of the guidelines would be inequitable or inappropriate in a particular case, as determined under criteria established by the Commission for Child Support Guidelines under section 46b-215a, shall be required in order to rebut the presumption in such case.

"The guidelines incorporate these statutory rules and contain a schedule for calculating the basic child support obligation, which is based on the number of children in the family and the combined net weekly income of the parents. Regs., Conn. State Agencies § 46b-215a-2b (f). Consistent with . . . § 46b-215b (a), the guidelines provide that the support amounts calculated thereunder are the correct amounts to be ordered by the court unless rebutted by a specific finding on the record that the presumptive support amount would be inequitable or inappropriate. Regs., Conn. State Agencies § 46b-215a-3 (a). The finding must include a statement of the presumptive support amount and explain how application of the deviation criteria justifies the variance. Id.; see also General Statutes § 46b-215b (a). [Our Supreme Court] has stated that the reason why a trial court must make an on-the-record finding of the presumptive support amount before applying the deviation criteria is to facilitate appellate review in those cases in which the trial court finds that a deviation is justified. . . . In other words, the finding will enable an appellate court to compare the ultimate order with the guideline amount and make a more informed decision on a claim that the amount of the deviation, rather than the fact of a deviation, constituted an abuse of discretion." (Citation omitted; internal quotation marks omitted.)

*Budrawich* v. *Budrawich,* 132 Conn. App. 291, 299–300, 32 A.3d 328 (2011); see also *O'Brien* v. *O'Brien,* 138 Conn. App. 544, 549–54, 53 A.3d 1039 (2012).

The court found the presumptive amount under the child support guidelines to be $100 per week. It then stated that, on the basis of all the family obligations, including travel cost, it would deviate from the child support guidelines and ordered a payment of $75 per week. Section 46b-215a-3 (b) (3) of the Regulations of Connecticut State Agencies provides in relevant part: "In some cases, a parent may incur *extraordinary expenses* that are . . . necessary for the parent to maintain a satisfactory parental relationship with the child . . . . Only the following expenses, when found to be *extraordinary* and to exist on a *substantial and continuing basis,* may justify a deviation from presumptive support amounts under this subdivision: (A) significant visitation expenses . . . ." (Emphasis added.)

Our Supreme Court has instructed that "[t]he deviation criteria are narrowly defined and require the court to make a finding on the record as to why the guidelines are inequitable or inappropriate." *Maturo* v. *Maturo,* supra, 296 Conn. 100. We conclude that the court failed to make the required finding and therefore abused its discretion in deviating from the child support guidelines by $25 per week. We agree with the statement of the court in *Weissman* v. *Fissell,* Superior Court, judicial district of New Haven, Docket No. FA-01-0449944-S (July 5, 2006), that "[m]any non-custodial parents have some transportation costs to see their child—for parents living within driving distance of each other, for example, the non-custodial parent is likely to pay for fuel and other costs picking up or dropping off the child, but these ordinary expenses usually do not warrant a deviation from the presumptive amount." See also *Favrow* v. *Vargas,* 231 Conn. 1, 35, 647 A.2d 731 (1994)

(noncustodial parent ordinarily must bear incidental expenses of visitation).

In this case, the only criterion stated for the deviation from the child support guidelines was the travel expenses of the defendant. To the extent that the court referenced "family obligations" we note that such a vague and generalized statement would not support a deviation on its own. See *Baker* v. *Baker*, 47 Conn. App. 672, 676–77, 707 A.2d 300 (1998) (failure of trial court specifically to identify criteria justifying deviation from child support guidelines warranted reversal and remand for new hearing). The court failed to identify why the defendant's travel costs did not fall into the "ordinary" category, but rather were "extraordinary" so as to warrant a deviation from the child support guidelines. Further, after our careful review of the record, we are unable to discern any such evidence that would support the court's determination. For these reasons, we conclude that court abused its discretion in ordering the downward deviation from the child support guidelines. Accordingly, we reverse that order and remand the case for a new hearing on the financial issues regarding child support.

II

We now address the plaintiff's claim that the court improperly ordered the parties, sua sponte, to pay $5000 in fees to Girolamo. Specifically, she argues that the court should not have issued such an order when neither the parties nor Girolamo raised the issue of her fees.[5] We agree.

The following additional facts are necessary for our discussion. On March 29, 2010, the parties reached an

[5] On October 12, 2012, Girolamo filed a letter with this court in compliance with Practice Book § 67-13. She adopted the position taken in the plaintiff's appellate brief with respect to the child support issue. As to the matter of her fees, she concluded that it was not a factual or legal issue implicating the daughter's interests, and therefore, she took no position on the issue.

agreement that provided, inter alia, that a guardian ad litem would be appointed regarding the issues of custody and visitation. It further stated that "[t]he cost shall be shared equally by the parties." The court, *Prestley, J.*, accepted this agreement and appointed Girolamo as guardian ad litem. On April 15, 2010, the defendant filed a motion to be excused from paying Girolamo's fees. He stated that due to his present financial situation and the court's support order of March 29, 2010, he was unable to afford either an attorney or Girolamo's fees. Then, on April 26, 2010, Judge Prestley issued the following order: "[Girolamo] to be paid at state rates by the State of Connecticut."

During Girolamo's testimony on the last day of trial, the court, *Dolan, J.*, inquired about her fees. She indicated that she was paid by the state, but that she had reached the $1000 limit on such payment, and therefore was "essentially doing it pro bono . . . ."[6] The court indicated that she needed to be paid. In its decision later that day, the court ordered the parties to pay $5000 to Girolamo, with the plaintiff responsible for two thirds and the defendant one third. Neither the parties nor Girolamo filed a motion or in any way requested the court to change Judge Prestley's order or sought additional payment for Girolamo's services as guardian ad litem. We also note that Girolamo never filed a fee affidavit with the court.

As a general matter, "[t]he court may order either party to pay the fees for the guardian ad litem pursuant to General Statutes § 46b-62, and how such expenses will be paid is within the court's discretion. . . . [W]e may not alter an award of attorney's fees unless the trial court has clearly abused its discretion, for the trial court is in the best position to evaluate the circumstances of each case. . . . Because the trial court is in

---

[6] Girolamo also testified that she was unsure whether she actually had received $1000 from the state for this case.

the best position to evaluate the circumstances of each case, we will not substitute our opinion concerning counsel fees or alter an award of attorney's fees unless the trial court has clearly abused its discretion." (Citation omitted; internal quotation marks omitted.) *Ruggiero* v. *Ruggiero*, 76 Conn. App. 338, 347–48, 819 A.2d 864 (2003).

In this case, however, the matter of payment of Girolamo's fees had been decided by Judge Prestley and that order was not challenged in any way in the intervening period before Judge Dolan's oral decision. In other words, the parties and Girolamo had no notice that the issue of the fees for the guardian ad litem, previously addressed by Judge Prestley, would be an issue to be determined by Judge Dolan. Cf. *Esposito* v. *Esposito*, Superior Court, judicial district of Middlesex, Docket No. FA-11-4013607-S (January 7, 2013) (court raised propriety of guardian ad litem being paid at discounted state rates when attorneys for parties were not). Additionally, we have stated: "The [trial] court is not permitted to decide issues outside of those raised in the pleadings. . . . Additionally, it is well established jurisprudence that the pleadings serve to frame the issues before a trial court." (Internal quotation marks omitted.) *Gaffey* v. *Gaffey*, 91 Conn. App. 801, 804 n.1, 882 A.2d 715, cert. denied, 276 Conn. 932, 890 A.2d 572 (2005); see also *Breiter* v. *Breiter*, 80 Conn. App. 332, 335, 835 A.2d 111 (2003) (court improperly decided matter not pleaded by parties). As stated previously, there was no motion or request seeking a different payment arrangement for Girolamo and there was no opportunity for the parties to address the issue prior to the court's ruling. Lastly, there was no evidence of Girolamo's services from which the court could calculate her fees as $5000 in addition to the payment she received from the state. For all these reasons, we conclude that the court improperly ordered the parties, sua sponte, to pay $5000 in fees to Girolamo.

The judgment is vacated as to the award of $5000 in fees to the guardian ad litem. The judgment is reversed only as to the issue of child support and the case is remanded for further proceedings limited to that issue. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.