******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# ELIANA NASSRA *v.* GEORGE A. NASSRA
## (AC 38615)

Sheldon, Elgo and Mihalakos, Js.

*Syllabus*

The defendant, whose marriage to the plaintiff previously had been dissolved, appealed to this court from the judgment of the trial court ordering the payment of court-ordered visitation supervisor fees to N. Co., a nonparty. The guardian ad litem had engaged S, a principal of N. Co., to provide supervised visitation services to the defendant and his children as part of court-ordered reunification therapy, beginning in 2009. In February, 2010, the defendant had filed a motion for payment, requesting permission to deduct additional funds from his life insurance policy to pay outstanding bills for a psychologist and S, who had assisted the psychologist in providing the supervised visitation services. In March, 2010, the trial court, by agreement of the parties, entered an order authorizing the defendant to borrow an additional $25,000 from the life insurance policy to pay additional outstanding bills to certain parties, including S. After N. Co. terminated its services with the defendant in July, 2010, for lack of payment for services rendered, it filed an appearance in the present dissolution action and, thereafter, filed a motion for order of payment. The defendant then filed a motion to dismiss N. Co.'s motion on the ground that the court lacked subject matter jurisdiction because N. Co. lacked standing. The trial court denied the defendant's motion to dismiss and, subsequently, granted N Co.'s motion for order of payment, ordering the plaintiff and the defendant to be equally responsible for the debt to N. Co. *Held*:

1. The trial court properly determined that N. Co., which satisfied the requirements of classical aggrievement, had standing to bring an action against the defendant and, therefore, that it had subject matter jurisdiction over the action; the record supported that court's finding that a valid oral contract existed between the defendant and N. Co., which met the first prong of classical aggrievement by demonstrating a specific, personal and legal interest in the cause of action sounding in breach of an oral contract, as well as the second prong of classical aggrievement concerning whether it had been injured by the challenged action, as the record demonstrated that N. Co. provided the defendant with supervised visitation services and was not paid for those services, thereby establishing that N. Co had been specially and injuriously affected by the defendant's failure to pay.

2. The defendant could not prevail on his claim that even if an agreement existed with N Co., it was an oral one and, thus, was time barred by the three year statute of limitations (§ 52-581 [a]); § 52-581 (a) does not apply to an oral contract that has been executed, and because, at the time N. Co. terminated its services for lack of payment, it had fully performed its contractual obligations and the oral contract, thus, was executed, § 52-581 did not apply and, instead, a six year statute of limitations (§ 52-576) was applicable to this case, and N Co.'s claim, which was brought less than six years after the completion of its services, was not time barred.

3. The defendant could not prevail on his claim that the trial court improperly ordered the parties to be equally responsible for the debt to N Co. after they had already complied with the separation agreement that had been incorporated into the dissolution agreement, which was based on his claim that the parties had no notice of the issue of the fees; the defendant had notice of the issue through N. Co.'s motion for order of payment, he addressed the issue through his motion to dismiss and at oral argument at the hearing on N Co.'s motion, the trial court decided an issue that was raised in the pleadings and its calculation of debt was supported by the record, and, therefore, it acted within its discretion in ordering the parties to be equally responsible for the debt to N Co.

Submitted on briefs November 30, 2017—officially released March 27, 2018

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Bridgeport and tried to the court, *Frankel, J.*; judgment dissolving the marriage and granting certain other relief; thereafter, N.J. Sarno and Company, LLC, filed a motion for order of payment, which the court, *Adelman, J.*, granted, and the defendant appealed to this court. *Affirmed.*

*Thomas J. Weihing*, *Adam J. Tusia*, and *Joseph D. Compagnone* filed a brief for the appellant (defendant).

*Logan A. Forsey* and *Timothy J. McGuire* filed a brief for the appellee (N.J. Sarno and Company, LLC).

*Opinion*

MIHALAKOS, J. This appeal arises from an action in which a nonparty, N.J. Sarno and Company, LLC (N.J. Sarno), filed a motion for order of payment of court-ordered visitation supervisor fees in connection with the underlying dissolution action between the plaintiff[1] and the defendant, George A. Nassra. After the court held a hearing on the motion, it rendered judgment for N.J. Sarno, finding the parties jointly and severally liable in the amount of $8785. On appeal, the defendant claims that the trial court: (1) lacked subject matter jurisdiction over the action because N.J. Sarno lacked standing; (2) improperly determined that an oral contract existed between N.J. Sarno and the defendant;[2] (3) improperly determined that N.J. Sarno's contract claim was not time barred by the three year statute of limitations provided by General Statutes § 52-581 (a); and (4) improperly rendered judgment in favor of N.J. Sarno after the parties had complied with the terms of the separation agreement. We disagree and, accordingly, affirm the judgment of the trial court.

The record reflects the following facts and procedural history. The plaintiff and the defendant were married on July 4, 1993. On December 15, 2008, the plaintiff filed an action seeking the dissolution of the marriage and custody of the parties' two minor children. Attorney Brian Kaschel subsequently was appointed by the court as guardian ad litem for the parties' two minor children. The parties agreed to deduct funds from the defendant's Northwest Mutual life insurance policy, which were to be held by Kaschel, to pay for attorney, expert and guardian ad litem fees.

On October 16, 2009, in connection with court-ordered reunification therapy, Kaschel referred the parties to David J. Israel, a psychologist, for an evaluation of the minor children and the development of a parenting plan. Kaschel also engaged Nicholas Sarno, a principal of N.J. Sarno, to provide supervised visitation services for the defendant and his children. In December, 2009, Israel began reunification therapy between the defendant and his two children. Sarno was present and "supervised" at each of these sessions with Israel. In February, 2010, Sarno and Donald Jacques, another employee of N.J. Sarno, began to facilitate and supervise visitation between the defendant and his children outside of sessions with Israel. On February 25, 2010, the defendant filed a motion for payments, in which he requested permission to deduct additional funds from his life insurance policy to pay outstanding bills for "[Israel] . . . and [Sarno], who is assisting [Israel] with supervised visitation." On March 17, 2010, N.J. Sarno sent a letter to the defendant, stating: "Please be advised that if [N.J. Sarno] does not receive payment in full on your [six] outstanding invoices by . . . March 19, 2010, we will no longer be able to continue providing [s]uper-

vised [v]isitation services. . . . Sincerely, Nicholas Sarno . . . [N.J. Sarno]." On March 18, 2010, the court, *by agreement of the dissolution parties*, entered an order authorizing the defendant to borrow an additional $25,000 from the life insurance policy "for the payment of fees to Kaschel . . . [Israel] and his assistant [Sarno]. [Kaschel] will hold and distribute [these] funds." Thereafter, the defendant brought his account current and N.J. Sarno continued to provide supervised visitation services. On July 29, 2010, N.J. Sarno terminated its services on the basis of lack of payment dating back to June 11, 2010.

Approximately four years later, on July 24, 2014, N.J. Sarno brought an action in the small claims session of the Superior Court. On March 6, 2015, the court determined that it lacked jurisdiction and dismissed the action. Four days later, N.J. Sarno filed an appearance in the underlying dissolution action and, thereafter, on March 18, 2015, moved for an order of payment of court-ordered visitation supervisor fees. In its motion, N.J. Sarno alleged that the defendant owed it $8785 for court-ordered supervised visitation services rendered between June 11, 2010 and July 29, 2010.

On April 1, 2015, the defendant moved to dismiss N.J. Sarno's motion, claiming that the court lacked subject matter jurisdiction because N.J. Sarno did not have standing to bring the action. Specifically, the defendant argued that N.J. Sarno lacked standing because it "was not involved in the instant action," "ha[d] never been referred to throughout the case," and "is a different entity than [Sarno] in his capacity as [Israel's] assistant." The defendant attached as an exhibit the court's March 18, 2010 order, which refers to Sarno as Israel's assistant. On April 21, 2015, N.J. Sarno filed an objection to the defendant's motion to dismiss the order of payment. N.J. Sarno attached as an exhibit the March 17, 2010 letter.

On June 24, 2015, the court, *Sommer, J.*, issued a written order denying the defendant's motion to dismiss. In its order, the trial court made the following findings: "In this action, there is no dispute that the defendant received the services rendered by individuals employed by [N.J. Sarno] over a significant period of time beginning in January, 2010, in compliance with court ordered reunification therapy for the defendant and his children, that the defendant paid a portion of the bill for said services and requested the family court's permission to utilize certain financial resources to pay for court-ordered supervised visitation provided by individuals under the auspices of [N.J. Sarno]. . . . As noted by [N.J. Sarno], the [defendant] has failed to submit any proof to rebut [N.J. Sarno's] jurisdictional allegations or any evidence which would call them into question. . . . [T]he court finds that the defendant has failed to establish a basis for the court to dismiss the

motion for order of payment of court-ordered visitation supervisor fees. . . ."

On July 7, 2015, the defendant moved the court for reconsideration, or in the alternative, articulation of certain factual findings underlying its denial of his motion to dismiss. Specifically, the defendant requested that the court articulate its findings that: (1) "there is no dispute that the defendant received the services rendered by the individuals employed by [N.J. Sarno]" and (2) "the defendant paid a portion of the bill for said services." The court, *Adelman*, *J.*, denied the defendant's motion on July 20, 2015.[3]

On December 14, 2015, Judge Adelman conducted a hearing on N.J. Sarno's motion for order of payment. The court heard testimony from Sarno, who explained that he was a co-owner of N.J. Sarno, which was an active limited liability company at all times it provided services to the defendant. Sarno testified that he was not Israel's assistant, had no formal working relationship with Israel and that he became involved at the request of Kaschel. Sarno further testified that, initially, there was an agreement that Kaschel would pay N.J. Sarno's invoices until the money ran out of escrow. Sarno explained that in March, 2010, there was an unpaid balance of approximately $4000 and that "[he] could no longer carry [the defendant]" because "[he] had a responsibility not only to [his] company and [himself], but also to one of [his] employees." Sarno informed the defendant that he could not continue to provide visitation services if he was not paid. Sarno testified that the defendant replied "please, don't leave. . . . I promise to pay you" and that, thereafter, the defendant would pay him "now and then."

At the hearing, N.J. Sarno submitted into evidence eight invoices that were billed by N.J. Sarno to the defendant for services performed between April 1, 2010 and July 29, 2010. Four invoices were marked "paid"; the four remaining invoices were unpaid, totaling $8785. Sarno testified that the invoices accurately represented the services that were provided to the defendant. Sarno stated that he hand delivered an invoice to the defendant on a weekly basis. Sarno further testified that he would always provide receipts for payments made by the defendant, stating: "[I]f [the defendant] made a payment and if it was not by check, if it was cash, we wrote out a . . . hand receipt that would say to [the defendant] from [N.J. Sarno], subject cash payment towards balance. Then in the body we would write received from [the defendant] . . . the sum . . . to be placed against balance outstanding, and then signed. . . . We have never . . . stopped that procedure in twenty-three years." Sarno acknowledged that he has no record of specific payments made by Kaschel or the defendant, or copies of receipts, just that the invoices were paid.

The defendant also testified. He disagreed with the

dates of service listed on the invoices. He further testified that he sometimes paid Sarno in cash but that he was never given a receipt. After hearing testimony, the court stated that it was "certainly familiar with [Sarno's] company and the services that [N.J. Sarno] has rendered. . . . [E]verything in this file indicates, in agreements and orders, that this was . . . a joint debt of the parties." The court then ordered that the plaintiff and defendant "shall be equally responsible for the debt to [N.J. Sarno] in the amount of $8785." This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

We first address the defendant's standing claim because it implicates subject matter jurisdiction and, thus, presents a threshold issue for our determination. See, e.g., *Dow & Condon, Inc.* v. *Brookfield Development Corp.*, 266 Conn. 572, 579, 833 A.2d 908 (2003) ("[o]nce the question of lack of jurisdiction of a court is raised, [however, it] must be disposed of no matter in what form it is presented . . . and the court must fully resolve it before proceeding further with the case" [internal quotation marks omitted]). The defendant claims that N.J. Sarno, a limited liability company, lacks standing because it does not have a legal or equitable right, title or interest in the subject matter of this controversy. Specifically, the defendant argues that "[a]lthough [Sarno] acted as [Israel's] assistant to facilitate and supervise the visitation . . . [N.J. Sarno] was not involved in the instant action," and that "there is no evidence that a contract, either oral or written, existed between N.J. Sarno and [the defendant]." In response, N.J. Sarno argues that "there was ample evidence that [it] had standing to [enforce the terms of the oral contract] and bring [an action] and, therefore, the court had subject matter jurisdiction." We agree with N.J. Sarno.

We initially note that although the defendant has appealed from the court's determination regarding liability, he renews his argument, previously raised in his motion to dismiss, that the court lacked subject matter jurisdiction because N.J. Sarno lacked standing.[4] "If a party is found to lack standing, the court is without subject matter jurisdiction to hear the case. Because standing implicates the court's subject matter jurisdiction, the [nonparty] ultimately bears the burden of establishing standing. A trial court's determination of whether a [nonparty] lacks standing is a conclusion of law that is subject to plenary review on appeal. We conduct that plenary review, however, in light of the trial court's findings of fact, which we will not overturn unless they are clearly erroneous. . . . In undertaking this review, we are mindful of the well established notion that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged. . . . This involves a two

part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the [record]; where the factual basis of the court's decision is challenged we must determine whether the facts . . . are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . A court's determination is clearly erroneous only in cases in which the record contains no evidence to support it, or in cases in which there is evidence, but the reviewing court is left with the definite and firm conviction that a mistake has been made." (Citations omitted; internal quotation marks omitted.) *R.S. Silver Enterprises, Inc.* v. *Pascarella*, 163 Conn. App. 1, 7–8, 134 A.3d 662, cert. denied, 320 Conn. 929, 133 A.3d 460 (2016).

"Standing is the right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . [W]hen standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue and not whether the controversy is otherwise justiciable, or whether, on the merits, the [nonparty] has a legally protected interest [that may be remedied]. . . .

"Standing is established by showing that the party claiming it is authorized by statute to bring an action, in other words statutorily aggrieved, or is classically aggrieved. . . . The fundamental test for determining [classical] aggrievement encompasses a well-settled twofold determination: [F]irst, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in [the challenged action], as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the [challenged action]. . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Internal quotation marks omitted.) *Chiulli* v. *Zola*, 97 Conn. App. 699, 704–705, 905 A.2d 1236 (2006); accord *May* v. *Coffey*, 291 Conn. 106, 112, 967 A.2d 495 (2009); *Heinonen* v. *Gupton*, 173 Conn. App. 54, 60, 162 A.3d 70, cert. denied, 327 Conn. 902, 169 A.3d 794 (2017).

"A limited liability company is a distinct legal entity whose existence is separate from its members. . . . A limited liability company has the power to sue or to be sued in its own name . . . or may be a party to an

action brought in its name by a member or manager. . . . A member or manager, however, may not sue in an individual capacity to recover for an injury based on a wrong to the limited liability company." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Channing Real Estate, LLC* v. *Gates*, 326 Conn. 123, 137–38, 161 A.3d 1227 (2017); *O'Reilly* v. *Valletta*, 139 Conn. App. 208, 214, 55 A.3d 583 (2012), cert. denied, 308 Conn. 914, 61 A.3d 1101 (2013).

In the present case, whether N.J. Sarno has been classically aggrieved and, therefore, has standing, hinges on whether a contractual relationship existed between N.J. Sarno and the defendant. "It is well settled that one who [is] neither a party to a contract nor a contemplated beneficiary thereof cannot sue to enforce the promises of the contract. . . . Under this general proposition, if the [nonparty] is neither a party to, nor a contemplated beneficiary of, [the] agreement, [it] lacks standing to bring [its] claim for breach of [contract]." (Citation omitted; internal quotation marks omitted.) *Deutsche Bank National Trust Co.* v. *Cornelius*, 170 Conn. App. 104, 116 n.10, 154 A.3d 79, cert. denied, 325 Conn. 922, 159 A.3d 1171 (2017); *Dow & Condon, Inc.* v. *Brookfield Development Corp.*, supra, 266 Conn. 579; see also *Chila* v. *Stuart*, 81 Conn. App. 458, 464, 840 A.2d 1176 ("[i]t is axiomatic that an action upon a contract or for breach of a contract can be brought and maintained by one who is a party to the contract sued upon" [citation omitted; internal quotation marks omitted]), cert. denied, 268 Conn. 917, 847 A.2d 311 (2004).

"[Where] there [is] no written agreement, and, therefore, no definitive contract language to interpret, determining who was a party to the contract and the intent of those parties with respect to the terms of any contractual agreement involve[s] factual determinations that we will reverse only if clearly erroneous." (Internal quotation marks omitted.) *Computer Reporting Service, LLC* v. *Lovejoy & Associates, LLC*, 167 Conn. App. 36, 45, 145 A.3d 266 (2016).

In the present case, Judge Sommer found that the defendant: (1) "received the services rendered by individuals employed by [N.J. Sarno] over a significant period of time"; (2) "paid a portion of the bill for said services"; and (3) "requested . . . permission to [deduct funds from the life insurance policy] to pay for court ordered supervised visitation provided by individuals under the auspices of [N.J. Sarno]." Furthermore, at the December 14, 2015 hearing on the motion for order of payment, Judge Adelman acknowledged that "there [was] no written contract, there [was] simply an oral contract." We note that the court made very few factual findings relative to the formation of an oral contract other than its existence;[5] however, our review of the record before the trial court reveals that there was sufficient evidence to support the court's finding

that a valid oral contact existed.

The record indicates that N.J. Sarno, through its agents Sarno and Jacques, provided the defendant with supervised visitation services between January and July, 2010. N.J. Sarno's invoices were initially paid with the defendant's funds, which were held in escrow by Kaschel. When those funds were depleted, the defendant acknowledged his obligation to pay for N.J. Sarno's services by way of his February 25, 2010 motion for payments and subsequent March 18, 2010 agreement, which was "incorporated by reference into the order . . . of the court" pursuant to General Statutes § 46b-66 (a).[6] On the basis of this court order, the defendant argues that "the authority for [Sarno] to do anything came from [Israel] and the court's authorization to allow [Sarno] to work for [Israel] as his assistant," and that N.J. Sarno "must be forced to show that [it] has standing based on the [March 18, 2010 agreement] alone." Such an argument ignores the fact that this language originated from a handwritten agreement between the defendant and the plaintiff, an agreement that N.J. Sarno was not a party to, and was incorporated as an order of the court. To the extent the defendant asserts that he did not know he was dealing with a limited liability company, the record before this court belies that assertion.[7]

Furthermore, although the defendant argues that "N.J. Sarno has not provided sufficient evidence to demonstrate the existence of a contract independent [of the March, 2010] agreement," he did not dispute Sarno's testimony that the defendant promised to pay him in March, 2010, that Sarno hand delivered invoices from N.J. Sarno on a weekly basis, and that the defendant paid him on occasion thereafter. On the basis of our review, we conclude that the court's finding that an oral agreement existed between N.J. Sarno and the defendant was supported by the record. We conclude that N.J. Sarno has met the first prong of classical aggrievement by demonstrating a specific, personal and legal interest in the cause of action, which sounds in breach of an oral contract. See, e.g., *Padawer* v. *Yur*, 142 Conn. App. 812, 66 A.3d 931 (limited liability company was proper party to sue on contract where party acted as agent of limited liability company and not as an individual), cert. denied, 310 Conn. 927, 78 A.3d 145 (2013); *Kadar Development Corp.* v. *Masulli*, 33 Conn. Supp. 613, 364 A.2d 851 (1976) (corporation had standing to sue on oral contract entered into between corporation's president and defendant).

We also conclude that N.J. Sarno has met the second prong of classical aggrievement, which "involves a determination of whether [it] has been injured by the challenged action." *Chiulli* v. *Zola*, supra, 97 Conn. App. 705. The record demonstrates that N.J. Sarno provided supervised visitation services to the defendant and was not paid for those services. We therefore conclude that

N.J. Sarno has established that it has been specially and injuriously affected by the defendant's failure to pay. Because N.J. Sarno has satisfied the requirements of classical aggrievement, we conclude that it had standing to bring an action against the defendant and, therefore, that the trial court had subject matter jurisdiction over the action.

## II

Notwithstanding the defendant's claim that no contract existed, in the final paragraph of his initial brief, he argues that "if an agreement existed . . . the agreement . . . would have been oral" and, therefore, time barred by the three year statute of limitations provided by § 52-581 (a). We conclude, however, that N.J. Sarno's claim is not time barred.

We begin by setting forth the applicable standard of review and the relevant legal principles that guide our analysis. "The question of whether a party's claim is barred by the statute of limitations is a question of law, which this court reviews de novo. . . . The factual findings that underpin that question of law, however, will not be disturbed unless shown to be clearly erroneous." (Citation omitted; internal quotation marks omitted.) *Village Mortgage Co.* v. *Veneziano*, 175 Conn. App. 59, 75–76, 167 A.3d 430, cert. denied, 327 Conn. 957, 172 A.3d 205 (2017).

Section 52-581 (a) provides that: "No action founded upon any express contract or agreement which is not reduced to writing, or of which some note or memorandum is not made in writing and signed by the party to be charged therewith or his agent, shall be brought but within three years after the right of action accrues." General Statutes § 52-576 (a), however, provides in relevant part: "No action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues . . . ."

This court has previously addressed the distinction between §§ 52-581 and 52-576. "These two statutes, each establishing a different period of limitation, can both be interpreted to apply to actions on oral contracts. Our Supreme Court has distinguished the statutes, however, by construing § 52-581, the three year statute of limitations, as applying only to *executory* contracts. . . . A contract is *executory* when neither party has fully performed its contractual obligations and is *executed* when one party has fully performed its contractual obligations. . . . It is well established, therefore, that the issue of whether a contract is oral is not dispositive of which statute applies. Thus, the . . . argument that § 52-581 automatically applies to [an] oral contract . . . is incorrect. The determinative question is whether the contract was executed." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Bag-*

*oly* v. *Riccio*, 102 Conn. App. 792, 799, 927 A.2d 950, cert. denied, 284 Conn. 931, 934 A.2d 245 (2007); accord *John H. Kolb & Sons, Inc.* v. *G & L Excavating, Inc.*, 76 Conn. App. 599, 610, 821 A.2d 774, cert. denied, 264 Conn. 919, 828 A.2d 617 (2003).

The defendant recognizes this statutory distinction and argues that the alleged oral agreement is executory in nature because neither he nor N.J. Sarno has fully performed their contractual obligations.[8] We are not persuaded. The record demonstrates that at the time N.J. Sarno terminated its services for lack of payment it had fully performed its contractual obligations, specifically, providing supervised visitation services. The oral contract, therefore, is executed. See, e.g., *John H. Kolb & Sons, Inc.* v. *G & L Excavating, Inc.*, supra, 76 Conn. App. 610 (contract executed where "plaintiff had performed all of its contractual obligations fully by obtaining the insurance on behalf of the defendant . . . [and] [a]ll that remained was for the defendant to provide payment for the plaintiff's services"); *Tierney* v. *American Urban Corp.*, 170 Conn. 243, 249, 365 A.2d 1153 (1976) (oral contract executed when plaintiff had done everything he had contracted to do); *Campbell* v. *Rockefeller*, 134 Conn. 585, 587–88, 59 A.2d 524 (1948) (oral contract executed where "everything that was to have been done by the plaintiff had been done, and all that remained was [for the defendant] to pay him"); *Hitchcock* v. *Union & New Haven Trust Co.*, 134 Conn. 246, 259, 56 A.2d 655 (1947) (contract executed where plaintiff worker had performed overtime and had not been paid).

We conclude that because the oral contract was executed, § 52-576, not § 52-581, is applicable in this case. N.J. Sarno terminated its services on July 31, 2010 and filed a motion for order of payment on March 18, 2015, less than six years after the completion of its services. Because we conclude that § 52-576, the six year statute of limitations, applies in this case, it is clear that N.J. Sarno's contract claim is not time barred.

### III

The defendant's final claim is that the court improperly awarded N.J. Sarno $8785 after the parties had already complied with the separation agreement that had been incorporated into the dissolution judgment. Specifically, the defendant, citing to General Statutes § 46b-62,[9] claims that "the parties . . . had no notice that the issue of fees for the [guardian ad litem], previously addressed [on March 18, 2010 and November 9, 2010], would be an issue to be determined by a subsequent judge." In response, N.J. Sarno contends that "the defendant improperly characterizes the issue . . . as one involving court-ordered payment of fees for a guardian ad litem."

The following additional facts and procedural history

are necessary to our resolution of this claim. On November 9, 2010, the court, *Frankel, J.*, dissolved the marriage and incorporated the terms of the parties' separation agreement and parental responsibility plan for their two minor children into the dissolution judgment.[10] At the December 14, 2015 hearing on N.J. Sarno's motion for order of payment, Judge Adelman indicated that he was troubled by the November 9, 2010 judgment, but made no legal rulings as to its effect.[11]

With that factual background in mind, we turn to the standard of review and applicable legal principles that guide our analysis. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Thus, unless the trial court applied the wrong standard of law, its decision is accorded great deference because the trial court is in an advantageous position to assess the personal factors so significant in domestic relations cases." (Internal quotation marks omitted.) *Antonucci* v. *Antonucci*, 164 Conn. App. 95, 106, 138 A.3d 297 (2016). "We have often stated that the power to act equitably is the keystone to the court's ability to fashion relief in the infinite variety of circumstances that arise out of the dissolution of a marriage. . . . These equitable powers give the court the authority to consider all the circumstances that may be appropriate for a just and equitable resolution of the marital dispute." (Internal quotation marks omitted.) *Callahan* v. *Callahan*, 157 Conn. App. 78, 100, 116 A.3d 317, cert. denied, 317 Conn. 913–14, 116 A.3d 812–13 (2015).

In support of his position that the court improperly awarded N.J. Sarno $8785 after the parties had already complied with the separation agreement, the defendant relies on *Kavanah* v. *Kavanah*, 142 Conn. App. 775, 66 A.3d 922 (2013). In that case, the court, *Prestley, J.*, incorporated into the dissolution judgment the parties' initial agreement to appoint a guardian ad litem and share costs equally. Id., 783. The defendant subsequently filed a motion to be excused from paying fees on the basis of financial hardship and Judge Prestley ordered that "[the guardian ad litem is] to be paid at state rates by the state." Id. After trial, the court, *Dolan, J.*, ordered the parties, sua sponte, to pay the guardian ad litem an additional sum of $5000. Id., 778, 783. On appeal, this court held that the court's order was improper because there was: (1) "no motion or request seeking a different payment arrangement for [the guardian ad litem]"; (2) "no opportunity for the parties to address the issue prior to the court's ruling"; and (3) no evidence of [the guardian ad litem's] services from which the court could calculate her fees." Id., 784.

We do not find support for the defendant's position in *Kavanah*, as it is distinguishable from the facts presented by this case. Here, the defendant had notice of the issue through N.J. Sarno's motion for order of payment. Thereafter, the defendant addressed the issue through his motion to dismiss and oral argument at the December 14, 2015 hearing. The trial court decided an issue that was raised in the pleadings and its calculation of debt was supported by the record. We therefore conclude that, under the facts of the present case, the court acted within its discretion in ordering the parties to be equally responsible for the debt to N.J. Sarno.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff, Eliana Nassra, now known as Eliana Kouchary, is not a participating party in this appeal.

[2] Although the defendant and N.J. Sarno have briefed standing and contract formation as separate issues, our determination with respect to standing is dependent on the existence of a contract, to which N.J. Sarno was a party. We therefore address both issues in part I of this opinion.

Furthermore, notwithstanding the defendant's position that no contract existed, in his reply brief, the defendant further claims that "[Sarno] materially breached the terms of the alleged oral contract." We decline to consider this claim because it was never raised in the defendant's initial brief. See, e.g., *Hurley* v. *Heart Physicians*, *P.C.*, 298 Conn. 371, 378 n.6, 3 A.3d 892 (2010) ("[W]e consider an argument inadequately briefed when it is delineated only in the reply brief. [W]e generally decline to consider issues that are inadequately briefed . . . ." [Internal quotation marks omitted.]); *Commissioner* v. *Youth Challenge of Greater Hartford, Inc.*, 219 Conn. 657, 659 n.2, 594 A.2d 958 (1991) ("Claims of error by an appellant must be raised in his original brief . . . so that the issue as framed by him can be fully responded to by the appellee in its brief, and so that we can have the full benefit of that written argument. Although the function of the appellant's reply brief is to respond to the arguments and authority presented in the appellee's brief, that function does not include raising an entirely new claim of error." [Citation omitted; internal quotation marks omitted.]).

[3] We note that Judge Adelman, not Judge Sommer, ruled on the defendant's motion for reconsideration and articulation. See Practice Book § 11-12 (c) ("The motion to reargue shall be considered by the judge who rendered the decision or order. Such judge shall decide, without a hearing, whether the motion to reargue should be granted.") The defendant, however, has not raised this issue on appeal.

[4] We clarify this point because N.J. Sarno, in its brief, focuses solely on the trial court's denial of the defendant's motion to dismiss. Specifically, it concludes that "[the] undisputed evidence, along with the allegations of the motion for order of payment, viewed in the light most favorable to N.J. Sarno, support the trial court's determination that the court had subject matter jurisdiction over the present matter." Although N.J. Sarno correctly states that our review of a trial court's ultimate legal conclusion is plenary, we disagree that our review is limited to the allegations of N.J. Sarno's motion for order of payment and undisputed evidence before the trial court at the time it decided the defendant's motion to dismiss.

This court has previously stated that: "[S]ubject matter jurisdiction can be raised at any time. . . . Consequently, it may be raised after significant discovery has occurred, at trial, or even on appeal. The possibility that the court's subject matter jurisdiction may be challenged at each stage of litigation militates against requiring litigants to use the motion to dismiss at all times to bring the issue to the court's attention. If the motion to dismiss was the only procedural vehicle by which subject matter jurisdiction could be contested, courts may not consider evidence produced through discovery that is relevant to the determination." (Citation omitted; emphasis omitted.) *Manifold* v. *Ragaglia*, 94 Conn. App. 103, 121, 891 A.2d 106 (2006).

[5] The defendant did not seek an articulation of the factual or legal basis for Judge Adelman's December 14, 2015 ruling.

[6] General Statutes § 46b-66 (a) provides in relevant part: "In any case

under this chapter where the parties have submitted to the court a final agreement concerning the custody, care, education, visitation, maintenance or support of any of their children . . . the court shall . . . determine whether the agreement of the spouses is fair and equitable under all the circumstances. If the court finds the agreement fair and equitable, it shall become part of the court file, and if the agreement is in writing, it shall be incorporated by reference into the order or decree of the court."

[7] For example, on November 8, 2010, the plaintiff filed her witness list, which included "Mr. Nicholas J. Sarno, N.J. Sarno & Company" and "Mr. Don Jacques, N.J. Sarno & Company."

[8] The defendant argues that N.J. Sarno could not have completed its contractual obligations because it materially breached the contract. Specifically, the defendant argues that "[N.J. Sarno] and [Sarno] did not perform the job that he was hired to do and was required of him." We previously declined to address the defendant's claim of material breach because it was inadequately briefed. See footnote 2 of this opinion.

[9] General Statutes § 46b-62 (b) provides in relevant part: "If, in any proceeding under this chapter . . . the court appoints counsel or a guardian ad litem for a minor child, the court may not order the father, mother or an intervening party, individually or in any combination, to pay the reasonable fees of such counsel or guardian ad litem . . . ."

[10] Article 5.3 of the separation agreement provided: "The [defendant] shall contribute the sum of [$16,323] from the cash surrender value of the life insurance policy referred to in Paragraph [6.7] herein to an interest bearing escrow account to cover the following expenses for the minor children: the outstanding fees of the [guardian ad litem], [Israel] and the costs of supervision. [The defendant's counsel] shall hold the funds in escrow and in the event that there is any money left in this account after the termination of supervised visitation, the parties shall divide the remaining balance in this account equally. [The defendant's counsel] shall provide counsel with a reasonable accounting of expenditures made from this account."

[11] The following exchanged occurred between the court and counsel for N.J. Sarno:

"The Court: The issue that I find troubling is that I have a judgment in November, 2010. I have an order for supervised visitation to be paid by the parties through certain funds. I have the final order in November directing the money to be paid. It's a court-ordered supervision. So if it wasn't taken care of in the judgment in November of 2010, what jurisdiction does the court have now to deal with it?

"[N.J. Sarno's Counsel]: [Sarno's] company was not the court-ordered supervisor when . . . the company was providing services. That was done through the [guardian ad litem] and the custody evaluator as part of an attempt to get [the defendant] seeing his children again. . . .

"The custody supervision that was court-ordered and dealt with in that payment order was for that JBM Investigations Company. It had nothing to do with the services that [Sarno] provided. . . .

"The Court: Well, you know, I am not worried about that. I am worried about having a final judgment that dealt with the issue.

"[N.J. Sarno's Counsel]: It deals with the issue of supervised visitation . . . going forward with . . . JBM Investigations. The judgment is silent as to in previous nonspecifically court-ordered . . . supervision services that [N.J. Sarno] provided to [the defendant]. . . .

"The Court: No. It talks about . . . the outstanding fees of the guardian ad litem, [Israel] and the cost of supervision. . . .

"[It] does not say who. It just says the cost of supervision shall be paid.

"[N.J. Sarno's Counsel]: That goes from the [July, 2010] to the [November, 2010] period in which JBM Investigations was providing supervised visitation. . . .

"[The] separation agreement which became an order of the court is silent as to [N.J. Sarno's] services."