******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# STEVEN BERNBLUM *v.* THE GROVE COLLABORATIVE, LLC, ET AL.
## (AC 44177)

Bright, C. J., and Prescott and Clark, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendants, B and G Co., for, inter alia, breach of contract relating to his negotiations with B over a potential lease of certain commercial property by G Co., B's limited liability company. The negotiations began in October, 2012, and several proposed lease agreements were drafted by the plaintiff's attorney and exchanged by the parties. All of the proposed leases listed G Co. as the sole tenant and C Co., a limited liability company that was not formed by the plaintiff until August, 2013, as the sole landlord. During the course of lease negotiations, B expressed a need for certain improvements to be made to the space, specifically, the construction of additional walls. The plaintiff paid for the construction of those additional walls on an assurance by G Co. that he would be reimbursed, and the final version of the proposed lease contained a provision pursuant to which the tenant would have been required to reimburse the landlord for the wall construction by way of additional rent. The plaintiff also made several additional repairs and improvements to the property. In February, 2013, the plaintiff delivered a final version of the proposed lease to B. Although B made an oral representation to the plaintiff that he intended to sign it once his accountant returned from a trip, the lease was never executed. Despite the absence of a finalized lease, the plaintiff provided G Co. with access to the property later in February, 2013, to conduct a grand opening event. Soon thereafter, G Co. removed items it had brought into the space and began operating its business out of another property, and the defendants never made any payments to the plaintiff. Following a bench trial, the court rendered judgment for the plaintiff on the counts of the revised complaint sounding in breach of contract, breach of lease, detrimental reliance, and negligent misrepresentation, and for the defendants on the fraud counts. The trial court subsequently denied the defendants' motion to reconsider/reargue. On the defendants' appeal to this court, *held*:

1. The plaintiff lacked standing to bring the counts of the complaint sounding in breach of contract, breach of lease, and detrimental reliance: the plaintiff did not have a direct interest in the litigation with respect to those counts because no contractual relationship existed, or was ever contemplated, between the plaintiff in his individual capacity and the defendants, as the plaintiff was not a party to any of the underlying proposed lease agreements and the plaintiff was, instead, negotiating solely on behalf of C Co.; moreover, the plaintiff brought the underlying action not on behalf of C Co., as the real party in interest, but in his own name individually.

2. The trial court improperly rendered judgment for the plaintiff on the counts of the complaint sounding in negligent misrepresentation, the plaintiff having failed to meet his burden of proof on those counts: the plaintiff failed to establish that his asserted expenditures for improvements to the property were made to his detriment in reasonable reliance on B's statement, in February, 2013, that he would sign the lease once his accountant returned, because, although the trial court admitted into evidence copies of checks reflecting payments that the plaintiff attributed to the cost of the repairs and improvements to the space, the vast majority of those checks predated B's February, 2013 statement, and, therefore, it could not reasonably be inferred from the checks that the plaintiff made the improvements in reliance on the February, 2013 representation by B; moreover, although there was evidence that B made statements during negotiations about changes that he would have liked to have seen made to the property and entered into a contract for the construction of additional walls, which the plaintiff paid for, those requests by B were not alleged to be the negligent misrepresentation on which the plaintiff reasonably relied to his detriment.

Argued December 6, 2021—officially released April 19, 2022

*Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of New Haven, and tried to the court, *Baio, J.*; judgment in part for the plaintiff, from which the defendants appealed to this court. *Reversed in part*; *judgment directed.*

*Robert M. Frost, Jr.*, with whom, on the brief, was *Erica A. Barber*, for the appellants (defendants).

*Earle Giovanniello*, for the appellee (plaintiff).

*Opinion*

PRESCOTT, J. In this action arising out of negotiations over a potential commercial lease, the defendants, The Grove Collaborative, LLC (The Grove), and its sole member, Slate Ballard, appeal from the judgment of the trial court, rendered following a bench trial, in favor of the plaintiff, Steven Bernblum, and from the court's denial of the defendants' motion to reconsider/reargue.[1] The defendants claim on appeal that the court improperly (1) concluded that the plaintiff had standing to bring those counts of the complaint sounding in breach of contract, "breach of lease," and "detrimental reliance" (contract counts), because he, individually, was not a party to any purported lease or the lease negotiations that underlie the allegations with respect to those counts[2] and (2) concluded that the plaintiff had established those counts sounding in negligent misrepresentation.[3] We conclude that the plaintiff lacked standing to bring the contract counts and that he failed to meet his burden of proof with respect to the negligent misrepresentation counts. Accordingly, we reverse in part and affirm in part the judgment of the court.

The following procedural history and facts, which either were found by the court and set forth in its memorandum of decision or are undisputed in the record, are relevant to our resolution of the present appeal. Starting in October, 2012, the plaintiff and Ballard began negotiations regarding a potential lease by The Grove of certain commercial space located in a building at 770 Chapel Street in New Haven. The Grove operated a "coworking space" at another location in New Haven that subleased private office space to other businesses, provided dedicated desk space to individuals, and rented out space for events. The 770 Chapel Street property is a multistory building composed of various suites and, at the time of the lease negotiations, was owned by the plaintiff. Portions of the building were occupied by tenants, but other areas were not in rentable condition. The space at issue in the present case was located in the rear of the third floor.

Several proposed lease agreements were drafted by the plaintiff's attorney and exchanged by the parties. Despite the fact that the plaintiff personally owned the 770 Chapel Street property at the time of the lease negotiations, all of the proposed leases listed The Grove as the sole tenant and 770 Chapel Street, LLC, an as yet to be formed limited liability company,[4] as the sole landlord. Printed under the signature lines on each of the proposed leases exchanged by the parties were the names of The Grove and 770 Chapel Street, LLC, only. The plaintiff quitclaimed title to 770 Chapel Street to 770 Chapel Street, LLC, on December 3, 2013.

During the course of lease negotiations, Ballard expressed a need for certain improvements to be made

to the space—namely, the construction of some additional walls. Ballard entered into a separate contract with DiStasio Building & Remodeling (DiStasio) to construct those walls for $7300 (wall contract), which was paid for by the plaintiff on an assurance by The Grove that he would be reimbursed. During the time that the parties engaged in lease negotiations, the plaintiff also made additional repairs to the space and continued with ongoing improvements to the property, also utilizing DiStasio for these renovations. When asked at trial to describe these repairs/improvements, the plaintiff stated: "Any holes in walls were repaired and there were holes in the walls. The whole place was painted with several coats of paint. The ceiling, parts of the ceiling [were] replaced. Electrical was brought up to what he needed. We built a . . . large room for him called a—I think it was called a training room. . . . We put in a kitchenette. We totally recarpeted the place, changed the front door, a lot of minor repairs." The plaintiff estimated that these repairs/improvements cost him between $68,000 and $78,000.

The plaintiff was not able to produce invoices or payment records at trial with respect to the repairs/improvements because those invoices purportedly had been destroyed. Instead, the trial court admitted into evidence copies of checks reflecting payments that the plaintiff and his daughter/partner attributed to the cost of the repairs and improvements to the space. With respect to the condition of the premises that The Grove was offered to lease, all versions of the proposed lease indicated that the landlord, 770 Chapel Street, LLC, would "be responsible to furnish the [t]enant with a 'vanilla box' . . . ." The plaintiff testified at trial on cross-examination that this term meant that "everything is painted white, you have carpeting, and a ceiling, heat, utilities, electric." Although the final version of the proposed lease contained a provision pursuant to which the tenant would have been required to reimburse the landlord by way of additional rent for the wall contract with DiStasio, none of the proposed leases provided for reimbursement related to any of the additional repairs/improvements referenced by the plaintiff, all of which were undertaken by him without his having obtained a signed lease or collecting any deposit from the defendants, and most of which arguably would have been required to conform the space to the so-called "vanilla box" he would have needed to provide any tenant.

In February, 2013, the plaintiff delivered a final version of the proposed lease to Ballard. The terms included the rental by The Grove of 6782 square feet of the property, which included approximately 404 square feet of common area. The duration of the proposed lease was for a stated period of five years. The base rent for the first year was to be $5500 per month plus an additional $608.33 per month as reimbursement for the construction of the additional walls built by DiStasio.[5] Dur-

ing the second year, rent was set to increase to $6782 per month. Rent would also increase by 3 percent in years three and five of the lease. The Grove also would pay as additional rent a pro rata share of the property's real estate taxes, fire and liability insurance, and utility costs.

The proposed landlord and tenant never executed this final proposed lease or any other written lease agreement, despite an oral representation by Ballard to the plaintiff after receiving the February, 2013 final proposed lease that he intended to sign it once his accountant had returned from a trip. Nevertheless, despite the absence of a finalized lease, later in February, 2013, the plaintiff provided The Grove with access to the property to conduct a February 25, 2013 "grand opening" or ribbon cutting event that was highly publicized and well attended by other businesses and municipal leaders, including the mayor. Soon after that grand opening event, however, The Grove, without further discussions with the plaintiff, removed the items it had brought into the space prior to the event and began operating its business out of another property in the same neighborhood. The defendants never made any payments to the plaintiff.

After The Grove vacated the space, the plaintiff continued to advertise the space through brokers and the Internet in an attempt to lease it to another tenant. The space eventually was leased to SeeClickFix, which previously had been a client of The Grove.[6]

In January, 2014, the plaintiff commenced the underlying action in his name individually. The operative ten count revised complaint was filed on November 7, 2016. Counts one through five were against The Grove, and sounded in, respectively, breach of contract, "breach of lease," fraud, "detrimental reliance," and negligent misrepresentation.[7] Counts six through ten alleged identical counts against Ballard individually. The defendants filed an answer that effectively disputed the material elements of the complaint.

At trial, the defendants argued during summation that the parties never had reached a meeting of the minds as to all material terms of the proposed lease and no version of the proposed lease was ever signed by the parties. The defendants also argued that the plaintiff did not properly mitigate his damages. Finally, the defendants argued that 770 Chapel Street, LLC, was the entity listed as the landlord in the proposed lease, not the plaintiff, and that that entity had not been established at the time relevant to this matter.

Following the two day trial before the court, *Baio*, *J.*, the court issued a memorandum of decision on May 8, 2020, rendering judgment in favor of the defendants on the plaintiff's fraud count, but in favor of the plaintiff on all remaining counts of the complaint. The court

analyzed the breach of contract and breach of lease counts together. It stated in relevant part: "In this matter, there was evidence to support that the parties had time to negotiate the terms and conditions of the lease and did engage in negotiations. The evidence demonstrates that the parties engaged in substantive discussions related to the lease agreement, the plaintiff was provided with ample opportunity to inspect the premises, engaged in business planning based upon the proposed lease and both proceeded to negotiate and finalize the agreement. *The lease, however, was never executed,* although the evidence supports that [Ballard] represented that he intended to sign the lease upon his accountant's return from a trip." (Emphasis added.) Rather than providing additional analysis regarding whether and on what legal theory an enforceable oral or written contract was formed and between whom, the court instead turned to the defendants' arguments that any claim of breach of contract or breach of lease would be barred by the statute of frauds. The court acknowledged that "[a]bsent a signed writing to establish the existence of this agreement, this action is barred by the statute of frauds."

The court, referencing the final proposed lease offered by the plaintiff in support of his contractual claims, concluded that "the document submitted by the plaintiff fails to satisfy the basic requirement of the statute of frauds that the written agreement be signed by the party, or the agent of the party to be charged. See [General Statutes] § 52-550. The document, therefore, upon initial examination, violates the statute of frauds, and any action brought on the contract would be barred unless any exception applies." (Internal quotation marks omitted.) The court agreed with the plaintiff's contention, however, that the parties' contract was "excepted from the statute of frauds on the basis of partial performance," explaining that "[a]cts on the part of a promisee may be sufficient to take an *oral contract* out of the statute of frauds" and that a "contract is enforceable, despite the statute, when, subsequent to the making of the contract, there has been conduct that amounts to part performance." (Emphasis added; internal quotation marks omitted.) The court agreed with the plaintiff that "the defendants' actions in requesting and directing various improvements and occupancy of the premises constitute[d] partial performance of the terms of the lease, creating an exception to the statute of frauds." The court thus concluded: "[T]he evidence demonstrates by a fair preponderance of the evidence that there was partial performance of the lease agreement which would except it from the statute of frauds and render the agreement enforceable, *at least for the one year.*" (Emphasis added.)

In addition to apparently concluding that the defendants had breached an oral lease agreement that was excepted from the statute of frauds, the court also con-

cluded that "[t]he plaintiff has met the burden of proof on the claims against each of the two defendants based on detrimental reliance." The court stated: "Separate from the breach of lease claims, the plaintiff submits that the defendants benefitted at the expense of the plaintiff through [their] representation that they intended to lease the premises and the actions taken to support that representation resulting in the plaintiff making substantial improvements as requested by the defendants." The court agreed with the plaintiff, stating as follows: "[T]he plaintiff alleges that in reliance on the defendants' representations, the plaintiff began renovating the premises in order to tailor it to the defendants' specific needs, refrained from showing the premises to anyone else, and as a result of the defendants' representations, the plaintiff put his efforts into renovating the premises and suspended work on the common areas in order to get the premises ready for the defendant[s]. Renovation of the common area is necessary in order to have the building ready to show to other prospective tenants. . . . The plaintiff claims reliance on the defendants' statements, conduct and commitments and that the defendants moved into the premises and used it. . . .

"During the period at issue, the defendants were able to market their business, participate in a large, public grand opening event attended by business people and local leaders, and the plaintiff incurred expenses for improvements all directed by the defendant[s], who vacated without notice. The defendants argue that the plaintiff benefitted as well, as the premises were in such a state of disrepair that the premises became marketable by the improvements. The defendants also submit that the grand opening event showcased the premises and provided advertising for the plaintiff, and the plaintiff did end up with a tenant for at least a one year term, and the tenant was one of the subtenants of the defendants. While each makes valid points, the fact remains that the plaintiff was not able to market the premises during the time when he thought in good faith that he had a lease agreement with the defendants. Hence, even if the grand opening event may have provided an advertising opportunity, the plaintiff could not use it as such for the premises in question. Additionally, while there is validity to the argument that the plaintiff may have benefitted from the improvements made, the fact remains that the improvements, or at least these specific improvements, may not have been made but for the arrangement with the defendants. The improvements were made based on the express understanding that this was part of the agreement with the defendants. To the extent there is any claim that the improvements were some benefit to the plaintiff, this argument is more appropriately considered in relation to the claim for damages if liability is found." (Citations omitted; internal quotation marks omitted.)

Finally, the court rejected the plaintiff's claim of fraud

or intentional misrepresentation, but, in summary fashion, concluded that the plaintiff nevertheless had met his burden of proof with respect to the negligent misrepresentation counts. Without analysis or discussion, the court concluded that the evidence submitted had established that The Grove, through its representative Ballard, misrepresented that it would lease the space and the plaintiff had relied on that representation to his detriment.

With respect to damages, the court awarded the plaintiff a total of $73,318.87. That total consisted of compensatory damages of $73,299.96, which is equal to the amount of base rent that the plaintiff would have been due for the first year under the final proposed lease plus reimbursement for the $7300 wall contract; plus an additional $78,018.91 as restitution for the "buildout" of the space; less the $78,000 in rent that the plaintiff collected in mitigation of his damages.

On May 28, 2020, the defendants filed a motion to reconsider and/or reargue. The defendants asserted that (1) no contract between the plaintiff in his individual capacity and the defendants existed, and, thus, the plaintiff lacked standing to prosecute the present action; (2) no judgment should have entered against Ballard individually on the contract counts because the plaintiff presented no evidence that Ballard had acted in his individual capacity rather than as a principal of The Grove; (3) recovery under the tort theory of negligent misrepresentation was barred by the economic loss doctrine; (4) the court incorrectly concluded that the plaintiff had proven the elements of negligent misrepresentation; (5) any recovery on a theory of detrimental reliance was unavailable given the court's finding of an enforceable contract; and (6) the court improperly calculated damages. The plaintiff objected to the defendants' motion, arguing, in relevant part, that the court's decision was supported by the evidence and that, as "the owner of the subject premises," he had "standing to assert his claims for breach of the lease agreement and negligent misrepresentation."

The court issued a decision denying the motion for reconsideration/reargument and sustaining the plaintiff's objection to the motion. The court stated in relevant part: "The court understands that the defendants disagree with some of the court's decision, however, that is not a basis for a motion for reconsideration, nor is the desire to present arguments or evidence not presented at the time of trial. . . . As to the defense argument relating to the status of the plaintiff the same was disputed, with arguments and evidence on both sides. The court did not accept the defense argument." This appeal followed.

I

The defendants claim that the court improperly con-

cluded that the plaintiff had standing to bring the underlying action despite the undisputed fact that he, individually, was not a party to any of the proposed lease agreements or the negotiations that form the basis of the allegations in the complaint. We agree with the defendants that the plaintiff lacked standing to prosecute the present action with respect to the contract counts of the complaint.

We begin with our standard of review and general legal principles. "Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . [If] a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause. . . . We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . In addition, because standing implicates the court's subject matter jurisdiction, the issue of standing is not subject to waiver and may be raised at any time." (Internal quotation marks omitted.) *Hilario's Truck Center, LLC* v. *Rinaldi*, 183 Conn. App. 597, 603, 193 A.3d 683, cert. denied, 330 Conn. 925, 194 A.3d 776 (2018).

"[A]s a general rule, a plaintiff lacks standing unless the harm alleged is direct rather than derivative or indirect. . . . [I]f the injuries claimed by the plaintiff are remote, indirect or derivative with respect to the defendant's conduct, the plaintiff is not the proper party to assert them and lacks standing to do so. [If], for example, the harms asserted to have been suffered directly by a plaintiff *are in reality derivative of injuries to a third party*, the injuries are not direct but are indirect, and the plaintiff has no standing to assert them." (Emphasis added; internal quotation marks omitted.) *Kelly* v. *Kurtz*, 193 Conn. App. 507, 540, 219 A.3d 948 (2019).

"The requirement of directness between the injuries claimed by the plaintiff and the conduct of the defendant also is expressed, in our standing jurisprudence, by the focus on whether the plaintiff is the proper party to assert the claim at issue. In order for a plaintiff to have standing, it must be a proper party to request adjudication of the issues." (Internal quotation marks omitted.) *Ganim* v. *Smith & Wesson Corp.*, 258 Conn. 313, 347, 780 A.2d 98 (2001).

It is axiomatic that "[a] limited liability company is a distinct legal entity whose existence is separate from its members. . . . [It] has the power to sue or to be sued in its own name . . . or may be a party to an action brought in its name by a member or manager. . . . *A member or manager, however, may not sue in*

*an individual capacity to recover for an injury based on a wrong to the limited liability company.*" (Citation omitted; emphasis added; internal quotation marks omitted.) *Kelly* v. *Kurtz*, supra, 193 Conn. App. 540; see also *Channing Real Estate, LLC* v. *Gates*, 326 Conn. 123, 138, 161 A.3d 1227 (2017) (member of limited liability company cannot recover for injury allegedly suffered by member's company and, accordingly, lacks standing to bring claim in individual capacity); but cf. *Saunders* v. *Briner*, 334 Conn. 135, 181, 221 A.3d 1 (2019) (recognizing limited exception applicable only to single member limited liability companies).

Furthermore, "[i]t is well settled that one who [is] neither a party to a contract nor a contemplated beneficiary thereof cannot sue to enforce the promises of the contract. . . . Under this general proposition, if the [nonparty] is neither a party to, nor a contemplated beneficiary of, [the] agreement, [it] lacks standing to bring [its] claim for breach of [contract]." (Internal quotation marks omitted.) *Nassra* v. *Nassra*, 180 Conn. App. 421, 431, 183 A.3d 1198 (2018).[8]

Turning to the present appeal, whether the plaintiff had standing to initiate the action in this case hinges on whether the facts in the record demonstrate that he had a direct interest in the litigation, meaning an interest that was not remote, indirect or simply derivative of an injury to another party.[9] On the basis of our review of the record and arguments of the parties, we conclude that the plaintiff did not have a direct interest in the litigation with respect to those counts of the complaint sounding in breach of contract, "breach of lease," or "detrimental reliance."[10]

No contractual relationship between the plaintiff in his individual capacity and the defendants existed or was ever contemplated.[11] The plaintiff was not a named party to the contract with respect to any of the underlying proposed lease agreements, and he was negotiating solely on behalf of his contemplated and soon to be formed limited liability company, 770 Chapel Street, LLC. Each of the four proposed leases that were exchanged between the parties and admitted into evidence listed The Grove as the sole tenant and 770 Chapel Street, LLC, of which the plaintiff was one of two members, as the sole landlord. Indeed, from the virtual outset of the party's negotiations, it was evident that the lessor was to be 770 Chapel Street, LLC, and not the plaintiff individually. The plaintiff, however, did not commence the underlying action in a representative capacity in the name of 770 Chapel Street, LLC, but in his own name individually. The fact that it was 770 Chapel Street, LLC, as the then owner of the subject property, rather than the plaintiff, that later mitigated any potential contract damages by entering into a lease with SeeClickFix is further evidence that 770 Chapel Street, LLC, and not the plaintiff individually, was the

proper party to pursue damages for any alleged harm resulting from the defendants' purported breach of their alleged contractual or quasi-contractual obligations.

Although not dispositive of the standing issue, this court's discussion in *Wasko* v. *Farley*, 108 Conn. App. 156, 947 A.2d 978, cert. denied, 289 Conn. 922, 958 A.2d 155 (2008), is nonetheless instructive. In that case, the plaintiff, a dentist who had brought a personal injury action following a motor vehicle accident, appealed from the underlying judgment claiming, inter alia, that the trial court had failed to properly charge the jury on damages related to the cost of hiring an additional dental assistant to do work in her dental practice that her injuries prevented her from doing. Id., 167–68. This court agreed with the trial court that, because the dental practice was organized as a limited liability company, the costs associated with hiring the dental assistant were wholly attributable to the business, not to the plaintiff individually, and, therefore, those costs could only be recovered by the business, which was not a party to the action before the trial court. Id., 170–71. This court recognized, as previously stated, that a limited liability company is a legal entity whose existence is separate and distinct from that of its members and that, as such, a member lacks standing to sue in an individual capacity to recover damages incurred by the limited liability company. Id., 170. The court concluded: "The plaintiff brought this action in her individual capacity—the limited liability company was not a party. Damages incurred by the limited liability company, therefore, were not at issue in the case. Accordingly, the court properly declined to instruct the jury on damages resulting from additional costs incurred by the plaintiff's dental practice." Id., 170–71. Thus, implicit in the court's holding in *Wasko* is that a plaintiff lacks standing to seek damages for harm suffered by a company associated with the plaintiff. See id.; see also *Scarfo* v. *Snow*, 168 Conn. App. 482, 497–504, 146 A.3d 1006 (2016).[12]

In short, the only contemplated parties to any potential lease, written or oral, underlying the breach of contract, "breach of lease" and "detrimental reliance" counts were The Grove and 770 Chapel Street, LLC. The plaintiff brought the underlying action not on behalf of 770 Chapel Street, LLC, as the real party in interest, but in his own name individually. Accordingly, the plaintiff lacked standing to prosecute those counts.[13] The court should have dismissed them on that basis and, therefore, improperly rendered judgment for the plaintiff and denied the defendants' postjudgment motion to reconsider/reargue, seeking to set aside the judgment.

## II

The defendants next claim that the court improperly rendered judgment against them on those counts sounding in negligent misrepresentation because the plaintiff failed to satisfy his burden of proof with respect to

all necessary elements of the tort. In particular, the defendants assert that the plaintiff failed to demonstrate that the repairs and improvements made to the space during lease negotiations were done on the basis of reasonable reliance on a factual misrepresentation made by the defendants. This, the defendants argue, is because the only asserted factual misrepresentation for which evidence was admitted was Ballard's statement in February, 2013, that he would sign the final proposed lease once his accountant returned. That representation, however, came after the repairs and improvements largely already were underway or completed as reflected in the dates on the checks submitted into evidence by the plaintiff as proof of damages. We agree with the defendants that, viewing the evidence in the light most favorable to sustaining the court's judgment, the plaintiff failed to establish that his asserted expenditures were made to his detriment in reasonable reliance on this representation, and this failure of proof requires reversal of the court's judgment with respect to the negligent misrepresentation counts.

"[Our Supreme Court] has long recognized liability for negligent misrepresentation. . . . The governing principles are set forth in . . . § 552 of the Restatement Second of Torts [1977]: One who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information. . . . [T]he plaintiff need not prove that the representations made by the [defendants] were promissory. It is sufficient . . . that the representations contained false information. . . . There must be a justifiable reliance on the misrepresentation for a plaintiff to recover damages." (Emphasis omitted; internal quotation marks omitted.) *Bellsite Development, LLC* v. *Monroe*, 155 Conn. App. 131, 151, 122 A.3d 640, cert. denied, 318 Conn. 901, 122 A.3d 1279 (2015).

"Traditionally, an action for negligent misrepresentation requires the plaintiff to establish (1) that the defendant made a misrepresentation of fact (2) that the defendant knew or should have known was false, and (3) that the plaintiff reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result." (Internal quotation marks omitted.) *Coppola Construction Co.* v. *Hoffman Enterprises Ltd. Partnership*, 309 Conn. 342, 351–52, 71 A.3d 480 (2013). In other words, in addition to proving that a defendant negligently made a misrepresentation of fact, a plaintiff must also demonstrate that any claimed demonstrable harm was a direct result of his reasonable reliance on that misrepresentation. It is the plaintiff's failure at trial to produce evidence to demonstrate this causal link that is at issue.

Although the court made no express findings with respect to each element of negligent misrepresentation, it is implicit in its judgment for the plaintiff that it found each element had been met. The defendants, in effect, claim that the court's implicit finding that the plaintiff reasonably relied on the alleged misrepresentation is clearly erroneous because the plaintiff failed to present evidence sufficient to support such a finding. "Under the clearly erroneous standard, we will overturn a factual finding only if there is no evidence in the record to support it . . . or [if] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Northeast Builders Supply & Home Centers, LLC* v. *RMM Consulting, LLC*, 202 Conn. App. 315, 353, 245 A.3d 804, cert. denied, 336 Conn. 933, 248 A.3d 709 (2021).

Here, the theory of the plaintiff was that it made significant changes and improvements to the premises in reliance on a false representation by Ballard. The only factual misrepresentation by Ballard identified by the plaintiff as a basis for his claim, however, was Ballard's assurance, made sometime in February, 2013, after he was presented with the final proposed lease, that he would sign the lease as proposed once his accountant had returned from vacation. The evidence presented at trial demonstrates that the plaintiff began the renovations, repairs and upgrades to his building, many of which would have been needed to restore the building to rentable condition, regardless of whether the negotiation with The Grove bore fruit, either prior to or during the extended lease negotiations and before any assurance by Ballard in February, 2013, that he would sign the proposed lease. Although there was evidence presented that Ballard made statements during negotiations about changes that he would have liked to have seen made to the space and that he contracted with DiStasio for the building of the additional walls, which was paid for by the plaintiff, these requests for changes to the premises were not alleged to be the negligent misrepresentation on which the plaintiff reasonably relied to his detriment.

Further, the only evidence admitted to prove the plaintiff's asserted detrimental reliance on the defendants' alleged misrepresentation following receipt of the February, 2013 lease were copies of checks made to various vendors, thirty-four of which were related to improvements made to the space at issue. A summary of those checks was authenticated and entered into evidence through the testimony of the plaintiff's daughter, acting in her capacity as the plaintiff's partner and bookkeeper for the plaintiff's company. The dates on those checks, however, range from August 21, 2012, which was prior to the start of lease negotiations,

through March 16, 2013. Accordingly, the vast majority of the checks predate Ballard's statement sometime in late February, 2013, that he would sign the plaintiff's latest proposed lease. Although two of the checks are dated in March, 2013, there was no evidence presented connecting the dates on the checks to when the plaintiff initiated the work associated with those payments. Thus, it cannot reasonably be inferred from the checks that the plaintiff elected to make the associated improvements in reliance on the February, 2013 representation by Ballard. Rather, the only reasonable inference to be drawn from this evidence was that the plaintiff's alleged expenditures on the space, whether by himself personally or on behalf of his soon to be formed limited liability company, preceded rather than followed the only alleged misrepresentation.

In short, there simply was no evidence presented from which the court reasonably could have concluded that the plaintiff acted to his detriment in reliance on Ballard's alleged February, 2013 misrepresentation. Because the evidence presented was insufficient to establish this essential element, the court's implicit finding to the contrary was clearly erroneous. Accordingly, the court should have rendered judgment on the merits of the negligent misrepresentation counts, like the fraud counts, in favor of the defendants.

The judgment is reversed with respect to counts one, two, four, five, six, seven, nine and ten of the revised complaint and the case is remanded with direction to render judgment dismissing counts one, two, four, six, seven and nine for lack of standing and for the defendants on counts five and ten; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] The Grid, a collection of various organizations in New Haven, including The Grove, that formed to strategize and apply for a state economic development grant, was also named as a defendant in the initial complaint, but the counts against it were dismissed. Because it has not participated in the present appeal, all references in this opinion to the defendants collectively are to Ballard and The Grove only.

[2] The defendants also claim with respect to the breach of contract and "breach of lease" counts that the court improperly determined that the parties entered into an enforceable contract that was not barred by the statute of frauds. The statute of frauds, which is codified at General Statutes § 52-550, provides in relevant part: "(a) No civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is *made in writing* and *signed by the party*, or the agent of the party, to be charged . . . (4) upon any agreement for the sale of real property or any interest in or concerning real property; (5) upon any agreement that is not to be performed within one year from the making thereof . . . ." (Emphasis added.) Because we conclude that the plaintiff, in his individual capacity, was not a party to any lease agreement contemplated by the parties during negotiations and thus lacks standing to pursue any contractual or quasi-contractual remedies, we need not address the applicability of the statute of frauds to the facts of this case.

The defendants also claim that the court improperly rendered judgment in favor of the plaintiff on the "detrimental reliance" count because such an alternative theory of recovery should have been barred due to the court's finding that a valid and enforceable contract existed. Given our conclusion that the plaintiff lacked standing to assert any of the contract counts, it is unnecessary to address the merits of this claim.

Finally, the defendants claim that the court improperly awarded damages against Ballard in his individual capacity despite the fact that the uncontested evidence establishes that, at all times relevant, he was acting solely in his representative capacity on behalf of The Grove. Because we reverse the judgment of the court on other grounds, we do not reach this claim.

[3] The defendants also claim on appeal that the court rejected their argument that recovery for negligent misrepresentation, a tort theory of liability, was barred in the present case by the economic loss doctrine, "a [common-law] rule limiting a contracting party to contractual remedies for the recovery of economic losses unaccompanied by physical injury to persons or other property." (Internal quotation marks omitted.) *State* v. *Lombardo Bros. Mason Contractors, Inc.*, 307 Conn. 412, 469 n.41, 54 A.3d 1005 (2012). Because we conclude that the plaintiff failed to meet his burden of proof with respect to the negligent misrepresentation counts, it is unnecessary to address the applicability of the economic loss doctrine.

[4] 770 Chapel Street, LLC, was formed on August 2, 2013. Its members are Bernblum and his daughter and business partner, Julie Bernblum. In *BRJM, LLC* v. *Output Systems, Inc.*, 100 Conn. App. 143, 917 A.2d 605, cert. denied, 282 Conn. 917, 925 A.2d 1099 (2007), this court, as an apparent matter of first impression, considered whether a contract entered into on behalf of a limited liability company *prior* to that company's formation was invalid. Id., 152. This court concluded that "a contract entered into prior to an entity's formation is not void ab initio due to *lack of capacity* because the individual entering into the contract on behalf of the unformed entity has the requisite capacity. It follows that, in the situation of an unformed entity, the individual serves as the party to the contract although the contract is entered into in the entity's name." (Emphasis added.) Id. Accordingly, this court held that "contracts entered into by individuals acting on behalf of unformed entities are enforceable." Id., 153.

This court's opinion in *BRJM, LLC*, however, is limited to the issue of whether a contract fails due to the lack of capacity of one of the contracting parties if, at the time the contract is executed, one of the parties to the contract is an unformed limited liability company. We do not read the opinion to stand for the proposition that, once a company named as a party to a contract has been duly formed, any individual member of that company retains standing to bring an action to enforce a contract executed only in the name of the company. As we note later in this opinion, even after this court's decision in *BRJM, LLC*, appellate courts clearly have rejected such a proposition. See, e.g., *Channing Real Estate, LLC* v. *Gates*, 326 Conn. 123, 138, 161 A.3d 1227 (2017); *O'Reilly* v. *Valletta*, 139 Conn. App. 208, 214–16, 55 A.3d 583 (2012), cert. denied, 308 Conn. 914, 61 A.3d 1101 (2013); *Padawer* v. *Yur*, 142 Conn. App. 812, 818, 66 A.3d 931, cert. denied, 310 Conn. 927, 78 A.3d 145 (2013); but see *Saunders* v. *Briner*, 334 Conn. 135, 181, 221 A.3d 1 (2019) (recognizing limited single member exception to general rule prohibiting members of limited liability companies from bringing direct actions to recover harms suffered by company only). Because 770 Chapel Street, LLC, is a two member company, the *Saunders* exception is inapposite.

[5] $608.33 multiplied by twelve equals approximately $7300, the amount of Ballard's contract with DiStasio.

[6] At trial, the plaintiff testified that he was able to rent the space for one year at $6500 per month for a total of $78,000. The court appears to have used this amount in its damages calculation as representing the plaintiff's mitigation of damages.

[7] The operative complaint is not a model of clarity with respect to the causes of action that the plaintiff sought to assert against the defendants. The defendants, however, never filed a request to revise or a motion to strike with respect to the operative revised complaint. The breach of contract counts assert that the defendants breached the terms of the final proposed written lease, which it is undisputed never was executed by the parties. The "breach of lease" counts also appear to assert a breach of the terms of the unexecuted written lease but also contains as an additional allegation that the defendants agreed orally to sign the proposed written lease. The counts labeled as "detrimental reliance" appear to assert a cause of action sounding in quasi contract or promissory estoppel. "[U]nder the doctrine of promissory estoppel [a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. . . . A fundamental element of promissory estoppel, therefore, is the existence of a clear and definite promise which a promisor *could reasonably have expected to induce reliance*. Thus, a promisor is not liable to a promisee

who has relied on a promise if, judged by an objective standard, he had no reason to expect any reliance at all. . . . Additionally, the promise must reflect a present intent to commit *as distinguished from a mere statement of intent to contract in the future*. . . . [A] mere expression of intention, hope, desire, or opinion, which shows no real commitment, cannot be expected to induce reliance . . . and, therefore, is not sufficiently promissory." (Emphasis added; internal quotation marks omitted.) *T & M Building Co.* v. *Hastings*, 194 Conn. App. 532, 553–54, 221 A.3d 857 (2019), cert. denied, 334 Conn. 926, 224 A.3d 162 (2020); see also footnote 10 of this opinion.

[8] "[T]he fact that a person is a *foreseeable* beneficiary of a contract is not sufficient for him to claim rights as a third party beneficiary." (Emphasis added.) *Grigerik* v. *Sharpe*, 247 Conn. 293, 317–18, 721 A.2d 526 (1998); see also *Hilario's Truck Center, LLC* v. *Rinaldi*, supra, 183 Conn. App. 605 ("Although . . . it is not in all instances necessary that there be express language in the contract creating a direct obligation to the claimed [third-party] beneficiary . . . the only way a contract could create a direct obligation between a promisor and a [third-party] beneficiary would have to be . . . because the parties to the contract so intended. . . . [B]oth contracting parties must intend to confer enforceable rights in a third party . . . in order to give the third party standing to bring suit." (Citations omitted; internal quotation marks omitted.)); 2 Restatement (Second), Contracts § 302, comment (e), p. 443 (1981) ("Performance of a contract will often benefit a third person. But unless the third person is an intended beneficiary . . . no duty to him is created."). Here, the plaintiff never asserted before the trial court that he was an intended beneficiary of the lease or any promise made by the defendants during negotiations, nor is there evidence in the underlying record that would support such an assertion.

[9] The plaintiff does not claim any statutory authority that would have conferred standing upon him to bring the underlying action nor is there evidence in the record from which to reach such a conclusion.

[10] We have concluded that, for the purpose of considering the plaintiff's standing to bring the various causes of actions raised in the complaint, the "detrimental reliance" count, which, as previously noted in footnote 7 of this opinion, we construe as sounding in promissory estoppel, is properly viewed through the same jurisprudential lens as those counts sounding in breach of contract. Promissory estoppel, after all, is a theory of recovery that permits courts to award damages incurred in reliance on a promise that is otherwise unenforceable as a contract; see *Meadowbrook Center, Inc.* v. *Buchman*, 149 Conn. App. 177, 194, 90 A.3d 219 (2014); and thus is quasi-contractual in nature. See 1 Restatement (Second), Contracts § 90, p. 242 (1981); 3 A. Corbin, Contracts (Rev. Ed. 1996) § 8.12, pp. 58–59, 98–101. Logically, just as only a party to a contract or a contemplated beneficiary ordinarily has standing to bring an action to enforce a contractual promise; *Tomlinson* v. *Board of Education*, 226 Conn. 704, 718, 629 A.2d 333 (1993); only a promisee, as the party to whom a promise is addressed, has standing to seek damages for detrimental reliance on that promise under a theory of promissory estoppel. Here, because any possible promise to the plaintiff was made in the context of lease negotiations, and the plaintiff ostensibly was acting during those negotiations not in his individual capacity but on behalf of his contemplated limited liability company, he was neither a party to any contemplated contract nor the party to whom any promise was made during negotiations.

[11] Although the court acknowledged multiple times that no written contract was executed by the parties, it nevertheless proceeded to award damages on the basis of what it described as partial performance of an oral lease. The only parties to any enforceable oral lease agreement, if any, were 770 Chapel Street, LLC, the only landlord that the evidence presented at trial suggests was contemplated by the parties, and The Grove as the sole putative tenant.

[12] In *Scarfo* v. *Snow*, supra, 168 Conn. App. 496–97, the plaintiff, a member of a limited liability company, claimed he had standing individually to bring, inter alia, a claim of breach of fiduciary duty against another member of the company who allegedly had engaged in self-dealing and breached the company's operating agreement. The plaintiff argued that he had suffered "a direct rather than a derivative injury" and therefore had standing to prosecute the tort claim. Id., 496, 504. This court, however, "disagree[d] that th[o]se [we]re direct injuries, and . . . conclude[d] that the plaintiff did not have standing in his individual capacity . . . ." Id., 497. Relevant to the present action, the court stated that "[a]lthough the plaintiff contend[ed] that he suffered direct injury by the alleged action or inaction of

[the alleged tortfeasor], any benefit he would have received . . . were it not for the alleged improprieties of [the alleged tortfeasor], would have flowed to him only through [the limited liability company] . . . . Accordingly, if there was an injury, that injury was sustained by [the limited liability company] and then sustained by the plaintiff. Thus, the plaintiff's injury is not direct, and he has no standing to sue in his individual capacity." Id., 504.

[13] We construe the defendants' standing claim, as it has been briefed, to be limited to the contract counts of the complaint. Nevertheless, because standing implicates subject matter jurisdiction and, thus, cannot be waived; see *Equity One, Inc.* v. *Shivers*, 310 Conn. 119, 126, 74 A.3d 1225 (2013); we also must consider whether the plaintiff lacked standing in his individual capacity to assert and prosecute the tort counts of the complaint. We are persuaded from our review of the pleadings and the record that, with respect to the tort counts, the plaintiff's allegations pose a colorable claim of direct injuries to the plaintiff individually sufficient to withstand a challenge to his standing to prosecute them.

-------------------------------------